UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RUSTY PELSIA**                                      **CIVIL ACTION**

**VERSUS**                                            **NO. 19-12295**

**SUPREME OFFSHORE**                                  **SECTION: "B"(1)**
**SERVICES, INC., ET AL.**

ORDER AND REASONS

Before the court are several motions including third-party defendant Expro America, LLC's motion to compel arbitration (Rec. Doc. 36), defendant and third-party plaintiff Oceaneering International, Inc.'s motion for summary judgment against Expro America, LLC (Rec. Doc. 39), defendant and third-party plaintiff Supreme Service and Specialty Company, Inc.'s motion for summary judgment against Expro America, LLC (Rec. Doc. 46), and Oceaneering International, Inc.'s motion for summary judgment against plaintiff Rusty Pelsia (Rec. Doc. 79).

For the reasons discussed below, **IT IS ORDERED** that Expro America, LLC's motion to compel arbitration (Rec. Doc. 36) is **GRANTED**. Third-party plaintiffs Oceaneering International, Inc. and Supreme Service and Specialty Company, Inc. are hereby compelled to arbitrate their claims against third-party defendant Expro Americas, LLC for defense and indemnification.

**IT IS FURTHER ORDERED** that the third-party complaints against Expro Americas, LLC (Rec. Docs. 26, 28) are hereby **DISMISSED WITHOUT PREJUDICE**.

1

**IT IS FURTHER ORDERED** that both motions for summary judgment against third-party defendant Expro Americas, LLC (Rec. Docs. 39, 46) are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the motion for summary judgment against plaintiff Rusty Pelsia (Rec. Doc. 79) is **GRANTED**.

I.   **FACTS AND PROCEDURAL HISTORY**

Chevron U.S.A. Inc., a nonparty to this lawsuit, engaged in service contracts with third-party defendant Expro Americas, LLC ("Expro"), defendant and third-party plaintiff Oceaneering International, Inc. ("Oceaneering"), and defendant and third-party plaintiff Supreme Service & Specialty Company, Inc. ("Supreme") for offshore work in the Gulf of Mexico. (Rec. Docs. 4 at 2, 26 at 2, 28 at 2). Chevron contracted with Expro in December 2009 to conduct well maintenance on one of their wells off the coast of Louisiana.[1] (Rec. Docs. 4 at 2, 26 at 3, 28 at 3). Chevron contracted with Supreme in June 2016 to also conduct well maintenance.[2] (Rec. Docs. 4 at 2, 26 at 3, 28 at 3). Then, in October 2017, Chevron contracted with Oceaneering to provide the M/V CADE CANDIES and its crew to serve as a tooling station and to facilitate the transport and housing of equipment, tools, supplies, and personnel necessary for operation through a time

---

[1] Master Well Services Contract No. C705669. *See* Rec. Doc. 36-2
[2] Master Contractor Services and Equipment Lease Contract No. CW1456049. *See* Rec. Doc. 36-4.

charter with Otto Candies, LLC.[3] (Rec. Docs. 4 at 2, 26 at 3, 28 at 3).

Expro employed plaintiff Rusty Pelsia as a high-pressure choke technician. (Rec. Doc. 4 at 2). He was aboard the M/V CADE CANDIES in September 2018 when he sustained injuries lifting and passing a 1502 2" Chiksan iron to a Supreme employee above the deck. (Rec. Doc. 4 at 3). A Chicksan iron is a common oilfield tool used to connect various pieces of pipe.



PICTURED RIGHT. A similar Chiksan (gray, u-shaped) that Pelsia lifted while aboard the M/V CADE CANDIES. Rec. Doc. 79-1 at 2. The 1502 2" Chicksan iron weighs approximately 52 pounds. *Id.*

Plaintiff alleges that a Supreme employee requested his help, but the deck was "cluttered and insufficient space was available to move" and when he lifted the tool above his shoulders, the tool shifted, injuring his neck and left arm (Rec. Doc. 4 at 3).

Plaintiff brought the instant suit in August 2019. In May 2020, Oceaneering and Supreme tendered its defense to and demanded indemnity from Expro under the Chevron-Expro contract's

---

[3] International Master Agreement No. IMA/132A. *See* Rec. Doc. 36-3. Otto Candies, LLC was previously dismissed from this case.

mutual release and indemnity provision. (Rec. Docs. 26 at 5, 28 at 5). The pertinent contract provision states that the

> Contractor defends and indemnifies each member of each Released Contractor Group[4] from Claims in respect of any Claims for injury to or death of any employees or personnel of a member of a Contractor Group where the injury or death arises out of this Contract and the Released Contractor's contract referred to in Section 12.1.

*Master Well Services Contract No. C705669*, § 12.3. (Rec. Doc. 36-2 at 35). After Expro refused to accept the tender of defense and refused to indemnify Oceaneering and Supreme, they each filed third-party complaints against Expro in August 2020 demanding defense, indemnity, and attorneys' fees and costs. (Rec. Docs. 26, 28). However, the contract that gives rise to Oceaneering and Supreme's complaint also contains an arbitration clause:

> …the Dispute shall be finally settled by binding arbitration and either Party may initiate such arbitration by giving notice to the other Party.

*Master Well Services Contract No. C705669*, § 18.5. (Rec. Doc. 36-2 at 43). The single issue at the center of Expro's motion to compel and Supreme and Oceaneering's motions for summary judgment against Expro is whether the indemnifying provision of

---

[4] "Released Contractor" means a contractor (other than Expro) that has entered into a contract with Chevron that includes, or is supplemented by a separate agreement that includes, release, defense and indemnity provisions that are substantially similar to those set out in Section 12 of the Chevron-Expro contract. Rec. Doc. 36-2 at 35.

4

the Chevron-Expro contract is subject to the contract's arbitration clause.

## II. LAW AND ANALYSIS

### a. The motion to compel arbitration

Under the Federal Arbitration Act, courts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement. *Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476 (5th Cir. 2002). "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Washington Mut. Finance Group LLC. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). Courts conduct a two-step inquiry to determine whether parties should be compelled to arbitrate. *Id.* First, the court must determine whether the parties agreed to arbitrate the dispute. If so, then the court must consider whether any federal statute or policy renders the claims nonarbitrable. *Id.*

There are two considerations in determining whether parties agreed to arbitrate: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration. *JP Morgan*

*Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). Principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate. *Id.* However, Fifth Circuit precedent has applied federal law to determine whether a non-signatory is bound by an arbitration clause, "because the determination of whether a non-signatory is bound by an arbitration provision 'presents no state law question of contract formation or validity,'" and a court should "look to the federal substantive law of arbitrability to resolve this question." *Id.* at n. 2 (citing *Washington Mut. Finance Group LLC. v. Bailey*, 364 F.3d 260, 267-68 n.6 (5th Cir. 2004) (quoting *Int'l Paper v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir. 2000).

Expro argues that Oceaneering and Supreme are required to arbitrate as third-party beneficiaries of the Chevron-Expro contract. The burden falls on Oceaneering and Supreme to demonstrate that the claims should not be arbitrated. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Oceaneering and Supreme fail to meet this burden. Oceaneering is correct in its assertion that it is a rare exception for arbitration agreements to apply to non-signatories, but it misrepresents precedent and makes a circular argument that in order for this court to compel a non-signatory to arbitrate under a contract, that Expro must first establish that there is a valid arbitration

6

agreement between Expro and Oceaneering. (Rec. Doc. 53 at 7-8). "Federal courts have held that so long as there is *some* written agreement to arbitrate, a third party may be bound to submit to arbitration." *Bridas*, 345 F.3d at 355 (emphasis included). The Fifth Circuit has identified at least six theories that permit non-signatories to be compelled to arbitration: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006) (citing *Bridas*, 345 F.3d at 355-56).

Expro argues that direct-benefit estoppel is the theory most applicable to this case. (Rec. Doc. 36-1 at 6). Direct-benefit estoppel "involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic*, 464 F.3d at 517-18 (quoting *E.I. DuPont de Nemours & co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)). The Fifth Circuit has identified two specific ways in which a non-signatory can be bound under the direct-benefit estoppel theory: (1) the non-signatory can be bound "by knowingly seeking and obtaining 'direct benefits' from that contract, *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010), and (2) "by seeking to enforce the terms of that contract

or asserting claims that must be determined by reference to that contract." *Id.* Notwithstanding section 18 of the Chevron-Expro contract, the direct-benefits estoppel theory binds Oceaneering and Supreme to the arbitration clause under the second method.

The Fourth Circuit found that the doctrine of equitable estoppel applied in *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH* and concluded the plaintiff was estopped from refusing to arbitrate its dispute with Schwabeddisen because the contract between Schwabeddisen and a third company, Wood, provided part of the factual foundation for every claim asserted by plaintiff. 206 F.3d 411, 418 (4th Cir. 2000). The plaintiff alleged Schwabeddisen failed to honor warranties in the Wood-Schwabeddisen contract, and sought damages, revocation, and rejection in accordance with that contract. *Id.* The Fourth Circuit found the plaintiff's entire case hinged on its asserted rights under that contract. *Id.* As demonstrated by their respective third-party complaints, Oceaneering and Supreme are seeking to enforce the indemnification provisions of the Chevron-Expro contract. Like the plaintiff in *International Paper* whose entire case relied on rights asserted under that contract, neither Oceaneering nor Supreme could enforce a claim against Expro without asserting contractual rights under the Chevron-Expro contract. It would be "manifestly inequitable" to permit Oceaneering and Supreme to claim they are non-signatories to the Chevron-Expro contract to

8

sidestep arbitration and at the same time enforce the indemnity provision of the contract against Expro in federal court. *See International Paper Co.*, 206 F.3d at 418 (quoting *Hughes Masonry Co. Inc. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981)). Accordingly, whether Oceaneering and Supreme are entitled to indemnification from Expro under the Chevron-Expro contract is a question to be decided in arbitration.

### b. The motion for summary judgment against plaintiff

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

To prevail on a maritime negligence claim, plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach proximately caused the damages; and (4) the plaintiff suffered actual damages. *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447, 1449 (5th

10

Cir.1989)); *see also*, *In re Great Lakes Dredge & Dock Co.*, 624 F. 3d 201, 211 (5th Cir. 2010); *see also*, *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F. 3d 370, 376 (5th Cir. 2000).

The determination of duty is a question of law and thus the function of this Court. *See*, *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F. 3d 370, 376 (5th Cir. 2000); *see also, Miss. Dep't of Transp. v. Signal Int'l LLC*, 579 F. 3d 478, 490 (5th Cir. 2009). "[T]he determination of whether a party owes a duty to another depends on a variety of factors, 'most notably the foreseeability of the harm suffered by the complaining party.'" *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F. 2d 65, 67 (5th Cir. 1987). "Duty ... is measured by the scope of the risk that negligent conduct foreseeably entails." *Id.* Further, "the general rule in maritime law is that '[a] principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions.'" *Landry v. Huthnance Drilling Co.*, 889 F. 2d 1469, 1471 (5th Cir. 1989) (emphasis added).

In the case at hand, there is no genuine issue of material fact of whether Oceaneering owed a duty to the plaintiff or whether that duty was breached. The plaintiff was not performing a task on behalf of Oceaneering, nor did it involve Oceaneering equipment, and the incident did not involve Oceaneering personnel. (Rec. Doc. 79-1 at 8). Further, the plaintiff was aware of the risk his work

11

posed and he disregarded the known safety policies and procedures. (Rec. Doc. 79-1 at 11). Moreover, Pelsia testified that it was Chevron, not Oceaneering, that coordinated the work on the M/V CADE CANDIES, *Id.* at 7, and that he was "not really blaming" Oceaneering, and that he did not "know what else they could have [done]." The evidence of record does not demonstrate a genuine issue of material fact; therefore, defendant Oceaneering is entitled to a judgment as a matter of law.

New Orleans, Louisiana this 4th day of February 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE